Norfolk

ARTHUR LEE BROWN

v.

COMMONWEALTH OF VIRGINIA

No. 1348-92-1

Decided February 15, 1994

COUNSEL

Thomas L. Northam, for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Arthur Lee Brown appeals his conviction for driving with a suspended operator's license. He contends that he was illegally stopped and seized without the police officer's having a reasonable suspicion that he was committing a traffic infraction or involved in criminal activity. The Commonwealth argues that no seizure occurred prior to the officer's determining that Brown had no operator's license; therefore, no Fourth Amendment privacy right was violated when the officer approached Brown and engaged him in conversation.

We hold that when the police officer asked Brown for his operator's license, he was "seized" within the protection provided by the Fourth Amendment. We also hold, however, that the seizure was lawful because the officer reasonably suspected that Brown was committing a traffic or criminal offense. The officer had observed Brown stop his automobile 450 feet from a police traffic checkpoint, switch drivers, make a U-turn, and ride away in the same direction from which he had approached the checkpoint. This conduct reasonably caused the officer to suspect that Brown was evading the checkpoint because he was driving in violation of the law. Accordingly, we affirm Brown's conviction.

Virginia State Trooper R. A. Gladden was working a "traffic checking detail" in Northampton County on Route 13, which is a north-south, two-lane highway. At the checkpoint, Route 13 is straight and

narrow with businesses and residences on the west side. The checkpoint site was on the east side with three marked and one unmarked police vehicles.

Gladden observed a southbound vehicle stop 450 feet from the checkpoint. After the vehicle stopped, Gladden saw the driver leave the driver's seat and change places with a passenger from the back seat. The driver was later identified as Arthur Lee Brown, the defendant, and the passenger with whom he changed places was his mother. Gladden observed the vehicle turn around, briefly head north, and then turn into a diner parking lot, which was "a very short distance from . . . where Brown initially stopped the car." Gladden drove to the parking lot, approached Brown, learned his identity and asked for his driver's license. Gladden ran a license check and learned that Brown's license was suspended.

Gladden testified that in his experience as a state trooper, "people who try to avoid traffic checking details probably have license violations such as suspended operator's license or habitual offender status."

## I.

Whether a person has been seized for purposes of the Fourth Amendment depends upon whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980). A reasonable belief by a person that he is not free to leave is a "*necessary*, but not a *sufficient*, condition . . . [for a] seizure effected through a show of authority" to have occurred. *California v. Hodari D.*, 499 U.S. 621, 628 (1991). In order for a seizure to have occurred, the individual, in addition to harboring a reasonable belief that he is not free to leave, must, in fact, be under some physical restraint or actually have submitted to the show of police authority. *Id.* While stopping a motor vehicle and detaining its occupants constitutes a seizure, "even though the purpose of the stop is limited and the [resulting] detention [is quite] brief," *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982), Trooper Gladden did not stop the vehicle occupied by Brown. Thus, whether a seizure occurred depends upon the nature of the confrontation when Trooper Gladden approached Brown.

The Commonwealth, relying primarily upon the holding in *Baldwin v. Commonwealth*, 243 Va. 191, 413 S.E.2d 645 (1992), asserts that no seizure took place.

[N]ot all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [the reviewing court] conclude that a "seizure" has occurred.

\* \* \* \* \* \* \*

As long as [a] person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

*Id.* at 195-96, 413 S.E.2d at 647 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

■ Trooper Gladden was in uniform and armed when he approached Brown. Brown did not attempt to leave but, instead, submitted to Trooper Gladden's show of authority. Although no restraint had been placed upon Brown until that point, and while a reasonable person well may have felt free to leave until then, when Trooper Gladden asked Brown for his operator's license, Brown was no longer free to leave. *See* Code § 46.2-104 (requiring operator on officer's request to exhibit license); *Brown v. Texas*, 443 U.S. 47, 50 (1979) (detention for purpose of requiring identification under state statute held to be a seizure). We hold that the exercise of police power pursuant to Code § 46.2-104, the act of requiring a person who has been operating a motor vehicle upon the public highways to produce an operator's license, is a restraint upon the individual's freedom of movement and constitutes a seizure of the person.

Unlike the situation in *Baldwin*, where Baldwin and a companion were free to leave even though a police officer had ordered them to come to his cruiser, Brown was required by law to display to the police officer his operator's license. Brown submitted to Trooper Gladden's show of authority by giving the officer his license. A seizure occurred within the meaning of the Fourth Amendment.

II.

■ When a police officer conducts a brief investigatory stop of a motorist, the officer must have an "articulable and reasonable suspicion that [the] motorist is unlicensed . . . or an occupant is otherwise

subject to seizure for [a] violation of [the] law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). *See also Terry v. Ohio*, 392 U.S. 1 (1968); *Zimmerman v. Commonwealth*, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988). In determining whether the police have a sufficient basis to justify an investigatory stop of a vehicle, we have stated,

> Each instance of police conduct must be judged for reasonableness in light of the particular circumstances.
>
> Courts must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that "trained law enforcement officers may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'"

*Castaneda v. Commonwealth*, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989)(*en banc*)(citations omitted).

When Trooper Gladden seized Brown by requesting that Brown exhibit his operator's license, the trooper had a reasonable suspicion that Brown was in violation of the Virginia licensing requirements. Gladden had witnessed Brown stop his vehicle 450 feet from a highly visible traffic checkpoint where several officers and their patrol cars were stationed. Gladden saw Brown leave the driver's seat, exchange places with his mother, make a U-turn and drive away from the checkpoint and, after traveling a short distance, turn into a diner parking lot. Such a departure from the normal course of travel had the appearance of evasive action to avoid the checkpoint. At that point, Trooper Gladden reasonably suspected that Brown was violating the law. The officer articulated as his reason for suspecting criminal activity that, in his experience as a state trooper, "people who try to avoid traffic checking details probably have license violations such as suspended operator's license or habitual offender status."

Brown contends, however, that the act of switching drivers does not constitute a basis for a "reasonable suspicion" that the driver is in violation of the law, *Zimmerman*, 234 Va. at 611, 363 S.E.2d at 709, nor does making a lawful turn within view of a police roadblock give rise to such a reasonable suspicion, *Murphy v. Commonwealth*, 9 Va. App. 139, 145-46, 384 S.E.2d 125, 128 (1989). Brown's evasive conduct was much more suspicious than was the conduct of the motorists in *Zimmerman* and *Murphy*. In *Zimmerman*, a driver exchanged seats with a passenger after he stopped and asked a police officer for directions. The Court held that the fact the operator did not follow the di-

rections given him by the officer was insufficient to give rise to a reasonable suspicion that the first operator was violating the law. Similarly, in *Murphy*, the fact that a motorist lawfully turned his vehicle onto an adjoining street within view of a roadblock was insufficient, without more, for a police officer to reasonably suspect that the turn was to avoid the roadblock. Accordingly, no reasonable suspicion of criminal activity could be drawn from such a course of action.

By contrast, Brown's act of stopping, switching drivers, and making a U-turn after seeing the checkpoint had the appearance of evasive action and caused Trooper Gladden reasonably to suspect, based upon his prior experience as a state trooper, that Brown's license was suspended or that he was an habitual offender. *See Stroud v. Commonwealth*, 6 Va. App. 633, 636, 370 S.E.2d 721, 723 (1988) (an abrupt U-turn executed 150 feet before a roadblock raised a reasonable suspicion). Under these circumstances, Trooper Gladden had an articulable and reasonable suspicion, which justified his following Brown and requesting that he exhibit his operator's license. Accordingly, Gladden's seizure of Brown was lawful.

*Affirmed.*

Baker, J., and Bray, J., concurred.