COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Senior Judge Baker
Argued at Norfolk, Virginia


KELVIN L. PLEASANTS, A/K/A
 KELVIN LEE PRICE, S/K/A
 KELVIN LELAND PLEASANT
                                       MEMORANDUM OPINION[*] BY
v.    Record No. 1321-98-2              JUDGE ROBERT P. FRANK
                                         OCTOBER 26, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Donald W. Lemons, Judge

          Anthony G. Spencer (Michael Morchower;
          Morchower, Luxton & Whaley, on briefs), for
          appellant.

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Kelvin L. Pleasants (appellant) appeals his convictions of

possession of cocaine with intent to distribute, possession of a

firearm while simultaneously possessing cocaine, possession of a

firearm after having been convicted of a felony, and carrying a

concealed weapon after a bench trial on April 13, 1998.  On

appeal, appellant challenges the trial judge's denial of his

motion to suppress the evidence.  We find that the trial judge did

not err in denying the motion to suppress, and affirm the

convictions.

<hr>

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

# I.  BACKGROUND

On March 26, 1997, Detective Ford of the Richmond Police Department received information from a confidential reliable informant (informant)[1] that within the preceding twenty-four hours, a black male known as "KP" sold what the informant recognized to be crack cocaine at 4216 Old Brook Road, Apartment Three.  Detective Ford applied for a search warrant for 4216 Old Brook Road, Apartment Three, based on the informant's information.  The search warrant affidavit stated that "KP" was a black male with dark skin, between 5'5" and 5'7" tall, and weighed 185 to 200 pounds.  "KP" was described as driving one of three vehicles that he parked behind the apartment:  1) a two-tone gray minivan, 2) a silver Cadillac Seville, or 3) a maroon Cadillac with a white top.  According to the informant, "KP" sold drugs from the apartment or walked out to the parking lot and sold drugs from one of the vehicles, usually the minivan.  The search warrant was issued on March 26, 1997, permitting officers to search 4216 Old Brook Road, Apartment Three, for "cocaine, records, ledgers, monies, firearms, packaging material, scales, and any other material used in connection with the distribution of the drug."

Officers Dunfee and Gadson were part of the team assigned to execute the search warrant.  They parked their marked police

_____

[1] Appellant does not contest the reliability of the informant.

-

unit across the street from the apartment building while they waited for the other members of the search warrant team to arrive. A two-tone gray minivan pulled into the apartment parking lot. Officers Gadson and Dunfee saw appellant exit the minivan carrying a white bag. Appellant entered 4216 Old Brook Road, but the officers were unable to determine if he entered Apartment Three because the building contained four separate apartments. The entrances to the separate apartments were not visible from outside the building. The officers did not execute the search warrant for Apartment Three because the other members of the search warrant team had not yet arrived. Appellant emerged from the apartment building fifteen to twenty minutes later carrying a white bag and got into the same minivan. The officers were still across the street. They followed the minivan and activated their emergency lights and siren after the van left the apartment parking lot. Appellant continued to drive for three miles before pulling his vehicle off of the road. Appellant did not commit any traffic violation.

Officer Gadson approached the driver's side of the minivan, and attempted to tell appellant that he was the target of a search warrant. Appellant was belligerent and began using abusive language. As a result of appellant's demeanor, Officer Gadson asked him to exit the minivan. Appellant refused to exit

-

the vehicle. Officer Gadson attempted to assist appellant from the minivan, and a struggle ensued. The officers handcuffed appellant because he continued to struggle.

Once the officers handcuffed appellant, Officer Gadson did a "quick check" around the driver's seat of the minivan to look for weapons. When he looked over the seat, he saw an open white bag containing marijuana in plain view. The officers arrested appellant for possession of the marijuana. They conducted a search of the van incident to the arrest and discovered a "fanny pack" inside the white bag. The fanny pack contained a gun, cocaine, scales and currency.

## II. ANALYSIS

Appellant contends that the trial court erred in denying his motion to suppress the evidence. Finding no error, we affirm the trial court's denial of the motion to suppress, and, therefore, affirm the convictions.

"On an appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the trial court's decision constituted reversible error." Harris v. Commonwealth, 27 Va. App. 554, 561, 500 S.E.2d 257, 260 (1998) (citing Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993)). "We view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom." Id. (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d

-

47, 48 (1991)).  "We review the trial court's findings of historical fact only for 'clear error,' but we review <u>de</u> <u>novo</u> the trial court's application of defined legal standards to the particular facts of a case."  <u>Id.</u> (citing <u>Shears v. Commonwealth</u>, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); <u>Ornelas v. United States</u>, 517 U.S. 690, 697 (1996)).

"If a police officer has reasonable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures."  <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 202, 487 S.E.2d 259, 263 (1997) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 2 (1968)).  "The justification for stopping the individual need not rise to the level of probable cause, but must be more than an 'inchoate and unparticularized suspicion or "hunch."'"  <u>Id.</u> (quoting <u>Terry</u>, 392 U.S. at 27).

The <u>Terry</u> rule applies to investigatory stops of automobiles provided the officer has a reasonable articulable suspicion, based upon objective facts, that the individual is involved in criminal activity.  See <u>Brown v. Commonwealth</u>, 17 Va. App. 694, 697-98, 440 S.E.2d 619, 621 (1994) (citing <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979)).  During a lawful stop of an automobile, a police officer may be permitted to require the driver to exit the vehicle which "'diminishes the

-

possibility, otherwise substantial, that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault.'" Hatcher v. Commonwealth, 14 Va. App. 487, 490-91, 419 S.E.2d 256, 258 (1992) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977)). Officers may use handcuffs during an investigatory stop provided that their use is "'reasonably necessary to maintain the status quo and protect officer safety.'" United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989) (quoting United States v. Taylor, 857 F.2d 210, 213 (4th Cir. 1988)).

> "If the police officer possesses a reasonable belief based on 'specific and articulable facts which . . . reasonably warrant' the officer in believing the suspect is dangerous and . . . may gain immediate control of weapons,'" the officer may conduct a Terry frisk of the suspect himself and search the accessible areas of the passenger compartment of the car in which a weapon might be hidden.

Stanley, 16 Va. App. at 875, 433 S.E.2d at 514 (quoting Michigan v. Long, 463 U.S. 1032, 1049-50 (1983) (citing Terry, 392 U.S. at 21)).

In Williams v. Commonwealth, 4 Va. App. 53, 65, 354 S.E.2d 79, 85-86 (1987), we held that officers had reasonable articulable facts upon which to base a Terry stop of the defendant as he drove away from a residence which was the subject of a search warrant. In Williams, the police obtained information from an informant that the defendant possessed and

-

was engaged in the distribution of contraband.  See id.  A search warrant was issued for the residence from which the defendant was said to be distributing the contraband.  See id. The officer's affidavit in support of the search warrant application described the defendant's vehicle and stated that a check of the license plate number of the car parked at the residence showed that the car belonged to the defendant.  See id. at 59, 354 S.E.2d at 82.  The police also were aware that the defendant had a history of drug related offenses.  See id. at 65, 354 S.E.2d at 85-86.  We held that these facts constituted a sufficient basis under Terry upon which to stop the defendant as he drove away from the residence.  See id.

While the facts in Williams were more compelling than the facts of this case, we hold that the information in the search warrant was sufficient to establish reasonable suspicion upon which to base a Terry stop of appellant.  Williams does not require that the identity of the subject of the Terry stop be known to the police.  Prior to stopping appellant, Officers Dunfee and Gadson were aware that a search warrant was issued for 4216 Old Brook Road, Apartment Three, based on the informant's information that "KP" sold drugs from the apartment. Appellant drove a two-tone gray minivan as described by the informant and detailed in the search warrant.  Further, appellant fit the general description of "KP" set forth in the search warrant.  We hold that this information provided the

-

officers with reasonable articulable suspicion to detain appellant for questioning pursuant to Terry.

Once the officers stopped appellant, he became belligerent and began using abusive language. At that point, the officers asked appellant to exit the vehicle. Under Mimms, we hold that they were justified in asking appellant to exit the vehicle as it was clear from his demeanor that he might pose a threat to the officers' safety if permitted to remain in the vehicle where the officers' view of him would be partially obstructed. For the same reasons, we hold that the officers were entitled to handcuff appellant once he was outside the vehicle as he continued to struggle with the officers. Crittendon clearly contemplates the use of handcuffs to ensure officer safety or to maintain the status quo during an investigative stop. Finally, we hold that Officer Dunfee's "quick check" around the driver's seat for weapons was permissible given appellant's demeanor during the investigative stop. Appellant's actions could reasonably warrant the belief that he was dangerous and could gain control of weapons. It was during the "quick check" that Officer Dunfee saw marijuana in plain view. The other contraband and weapons were discovered pursuant to a search incident to arrest based on the possession of marijuana.

We hold, therefore, that the trial court properly denied appellant's motion to suppress the evidence as a valid

-

investigative stop pursuant to Terry led to the discovery of the evidence.

### III.  CONCLUSION

For these reasons, we hold that the trial court properly denied appellant's motion to suppress the evidence, and, therefore, affirm appellant's convictions.

Affirmed.

-