COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Elder
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0497-00-2          JUDGE LARRY G. ELDER
                                         JULY 11, 2000
JAMISON JERALD MORTON


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Thomas N. Nance, Judge

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellant.

            Gregory W. Franklin, Assistant Public
            Defender (Office of the Public Defender, on
            brief), for appellee.


     Jamison Jerald Morton (defendant) stands indicted for

possession of cocaine with intent to distribute.  The

Commonwealth appeals a pretrial ruling granting defendant's

motion to suppress all evidence seized from defendant.  On

appeal, the Commonwealth contends the trial court erroneously

suppressed the evidence because it was obtained during a

consensual encounter with defendant for which the police did not

need reasonable suspicion or probable cause.  We hold the trial

court did not err in concluding that the officer's retention of

defendant's identification converted the encounter into a

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

seizure under the facts of this case.  Because the officers lacked reasonable suspicion or probable cause to justify the seizure, as the Commonwealth concedes, we hold that the seizure was unreasonable and that the trial court did not err in granting the motion to suppress.

I.

BACKGROUND

On October 19, 1999, Richmond Police Officer Bruce Gochenour and his partner were traveling in a marked patrol car. Gochenour's partner was driving, and Gochenour rode in the front passenger seat.  Each officer was in uniform, wore a badge, and carried a firearm on his hip.

Gochenour saw defendant standing on a street corner with three or four other people.  As Gochenour and his partner drove closer, the others left, but defendant remained.  The patrol car pulled up beside defendant.  Gochenour rolled down his window, and in a conversational tone, he asked defendant "what was going on."  Defendant "didn't really give a reply," but remained standing on the corner.  Gochenour got out of the car and said, "[C]an I talk to you for a second?"  Again, defendant gave "no real verbal reply.  He just stood there."

Around this same time, Gochenour heard his partner exit the police car.  Gochenour did not actually see him but assumed he positioned himself at the rear of the vehicle.

-

Gochenour, from a position of "about arm's length" from defendant, asked, "[D]o you have an ID with you?" Defendant said "yes," "pulled an ID from his pants pocket" and "handed it to [Gochenour]." Gochenour took the identification card and "looked at it to see that [it had] the blue and purple colors, like . . . a DMV ID card," but he did not examine the identifying information or "run [the] information in" at that time. Instead, he placed the ID card in his utility belt, as was his usual practice, and asked, "[D]o you have any weapons on you?" Defendant then raised both hands, keeping one fist closed, but gave no verbal response to Gochenour's question. Gochenour said he "didn't know what [that] meant," so he asked defendant, "[C]an I pat you down?" Defendant said, "[Y]eah, sure," "kind of shrugged his shoulders," and opened his left hand, revealing two off-white rocks which Gochenour believed to be crack cocaine. Gochenour then took appellant into custody and retrieved the rocks, which had fallen from defendant's hand. Gochenour searched defendant incident to arrest and recovered more suspected cocaine from his person.

Gochenour testified that he never told defendant during the encounter that he was free to leave but that his tone remained conversational throughout and that he did not touch defendant until after defendant had consented to a pat-down and dropped the suspected rocks of crack cocaine.

The trial court, after hearing counsel's argument on the motion to suppress, made the following observation:  "What [defense counsel] is saying . . . , if I understand him correctly, is that once [Gochenour] retained [defendant's] identification card and didn't hand it back to him, the sequence there is very crucial.  It's whether [Gochenour] took it, stuck it in his belt and then asked to pat him down."  The court then questioned Gochenour to clarify the sequence of events and made the following findings:  "[Gochenour] said he took the card. Didn't check the details.  Saw that it was an ID card.  Stuck it in his belt.  Asked [defendant] if he had any weapons. [Defendant] raised his hand, and one of his fists was closed." Defense counsel then said, "And [Gochenour] said, do you mind if I pat you down?" and the court responded, "And that's when [defendant] dropped [the suspected rocks of crack cocaine]."

The court gave counsel an opportunity to file legal memoranda in support of and opposition to the motion.  Following receipt of these memoranda, the trial court granted the motion to suppress.

II.

ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380

-

S.E.2d 656, 659 (1989).  On appeal, we view the evidence in the light most favorable to the prevailing party, here the defendant, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

Police-citizen encounters generally fall into one of three categories.  See McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

> First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot.  Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

Id. (citations omitted).  "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the

-

citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'"  Greene v. Commonwealth, 17 Va. App. 606, 610, 440 S.E.2d 138, 140 (1994) (quoting United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980) (citation omitted)).  Therefore, consensual encounters "'need not be predicated on any suspicion of the person's involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'"  Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)).  "'As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.'"  Greene, 17 Va. App. at 610, 440 S.E.2d at 140 (quoting Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877).  "A seizure occurs when an individual is either physically restrained or has submitted to a show of authority."  McGee, 25 Va. App. at 199, 487 S.E.2d at 262.

"Whether a seizure has occurred . . . depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave."  Id. at 199-200, 487 S.E.2d at 262.  Other factors relevant under the "totality of the circumstances" analysis include "'"the

-

threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."'"  Greene, 17 Va. App. at 611 n.1, 440 S.E.2d at 141 n.1 (quoting Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877) (other citation omitted).

A request for identification made during an otherwise consensual encounter does not, standing alone, convert the encounter into a seizure.  See, e.g., INS v. Delgado, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762, 80 L. Ed. 2d 247 (1984).  However, in the case of the driver of a stationary automobile, we have held "that 'what began as a consensual encounter quickly became an investigative detention once the [officer] received [the individual's] driver's license and did not return it to him.'"  Richmond v. Commonwealth, 22 Va. App. 257, 261, 468 S.E.2d 708, 710 (1996) (quoting United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995)).  In Richmond, a uniformed deputy approached Richmond as he was seated in his parked vehicle at a gas station and asked for Richmond's driver's license.  See id. at 259, 468 S.E.2d at 709.  Richmond complied and waited while the deputy ran a record check at his police vehicle.  See id.  Upon returning to Richmond's car, the deputy observed drug paraphernalia inside the vehicle.  See id.  We held that Richmond had been seized before the officer observed

-

the drug paraphernalia because "[a] reasonable person in [Richmond's] circumstances would not have believed that he could terminate the encounter once the officer retained the driver's license and returned to his police vehicle to run a record check."  Id. at 261, 468 S.E.2d at 710.  We also noted that, "as a practical matter, if [Richmond] left the scene in his vehicle while [the deputy] had his driver's license, [Richmond] would have violated Code § 46.2-104, which prohibits a vehicle operator from driving without a license."  See id.

We have not previously had occasion to consider the nature of an encounter in which an officer requests and retains identification from a pedestrian.  The Commonwealth contends on brief, however, that our ruling in Richmond, and the earlier case of Brown v. Commonwealth, 17 Va. App. 694, 440 S.E.2d 619 (1994), is limited to cases in which "the citizen is located in a car and his driver's license is taken by the officer so that the driver would not feel free to leave because to do so would violate the law" prohibiting driving without a license. (Emphasis added).  We disagree.  Our holding in Richmond, as quoted above, did not rest solely upon the single causal connection the Commonwealth asserts.  Rather we held that "[a] reasonable person in [Richmond's] circumstances would not have believed that he could terminate the encounter once the police officer retained the driver's license and returned to his police vehicle to run a record check" and "[f]urthermore, as a

-

practical matter, [that] if [Richmond] left the scene in his vehicle while [the deputy] had his driver's license, [Richmond] would have violated Code § 46.2-104, which prohibits a vehicle operator from driving without a license."  Id. at 261, 468 S.E.2d at 710 (emphasis added).  That Richmond's departure by car without his driver's license would have violated the law was not the singular factor in that case.

Under the reasoning of Richmond, we affirm the trial court's ruling that appellant was seized when Officer Gochenour requested appellant's identification and placed it in his belt prior to asking appellant's permission to frisk him for weapons. Other jurisdictions have reached this same conclusion.  In Salt Lake City v. Ray, 998 P.2d 274 (Utah Ct. App. 2000), for example, two uniformed officers engaged in a consensual encounter with Ray, a pedestrian, asked her for identification, and she complied with the request by producing a state identification card.  See id. at 276.  However, "[r]ather than viewing the information and returning the card, [one of the officers] retained [the identification]" and stepped away "to check for warrants on his portable radio" while the other officer asked for permission to search Ray's bag.  Id.

Although Ray acceded to a search of her bag, the court held that the encounter became a seizure such that her accession to the search was not truly consensual.  See id. at 276, 278.

-

>        Given the totality of the circumstances, it
>        is clear that a reasonable person in Ray's
>        position would not feel free to just walk
>        away, thereby abandoning her identification,
>        let alone to approach [the officer], take
>        back her identification, and then leave.
>        Instead, [the officer's] retention of her
>        identification during the warrant check
>        sufficiently restrained Ray's freedom of
>        movement that she was seized for purposes of
>        the Fourth Amendment.

Id. at 278 (footnotes omitted).  Although the officer testified he would have returned Ray's identification and allowed her to leave if she had asked to do so, the court held that this fact was irrelevant because it was not communicated to Ray.  See id. at 268 n.1.  It observed that "although an officer is not required to inform a person he or she is free to leave during a [consensual] encounter, such a warning might aid the officer from unwittingly escalating the encounter to a [seizure]."  Id.

The Supreme Court of Tennessee reached a similar result in State v. Daniel, 12 S.W.3d 420 (Tenn. 2000), in which an officer approached four men standing around a vehicle in an unlighted parking lot after dark.  See id. at 423.  The officer asked for identification and retained it while he ran a computer check, which revealed an outstanding warrant for Daniel.  See id.  The court apparently placed no weight on whether the vehicle belonged to any of the men or whether they were traveling in it.  See id.  In holding that the retention of Daniel's identification constituted a seizure, the court noted that,

-

> [w]ithout his identification, Daniel was effectively immobilized. Abandoning one's identification is simply not a practical or realistic option for a reasonable person in modern society. . . . [W]hen an officer retains a person's identification for the purpose of running a computer check for outstanding warrants, no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification.

Id. at 427.

Although both Ray and Daniel involved an officer's retention of an individual's identification for purposes of running a check for outstanding warrants, the key issue in Ray and Daniel was the retention itself and its effect on whether a reasonable person in the owner's position would have believed she or he was free to leave. See Ray, 998 P.2d at 278 & nn.2-3; Daniel, 12 S.W.3d at 427. The court in Ray also noted that the "critical time at issue [was] . . . when Ray consented to the search." 998 P.2d at 278 n.3; see also Lambert, 46 F.3d at 1069 n.4. In appellant's case, he consented to the search at a time when Gochenour, a uniformed and armed police officer whose similarly clad partner stood nearby, asserted control over appellant's person by retaining possession of his identification. The evidence supports the trial court's conclusion that a reasonable person in defendant's position would have believed he was not free to leave.

-

For these reasons, we affirm the ruling of the trial court granting appellant's motion to suppress, and we dismiss the indictment for possession of cocaine with intent to distribute.

Affirmed.