COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Humphreys
Argued by teleconference


MHAMMED TAHIRI-AMINE, S/K/A
   MUHAMMED TAHIRI-AMINE

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0163-10-2                          JUDGE ROBERT J. HUMPHREYS
                                                                 AUGUST 3, 2010

COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF HENRICO COUNTY
                              Daniel T. Balfour, Judge

            Christopher J. Collins for appellant.

            Susan M. Harris, Assistant Attorney General (Kenneth T. Cuccinelli,
            II, Attorney General, on brief), for appellee.


       Mhammed Tahiri-Amine ("Tahiri-Amine") was convicted in a bench trial[1] of driving

under the influence, second offense, in violation of Code §§ 18.2-266 and 18.2-270, and driving

on a suspended license, second offense, in violation of Code § 46.2-301.  Tahiri-Amine was

---

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Both parties contend on brief that the conviction was pursuant to a conditional guilty
plea under Code § 19.2-254.  However, the court order indicates that Tahiri-Amine entered a
plea of not guilty for each offense and was convicted after a bench trial.  "Settled principles
provide that '[a] court speaks through its orders and those orders are presumed to accurately
reflect what transpired.'"  Ferguson v. Commonwealth, 51 Va. App. 427, 434, 658 S.E.2d 692,
696 (2008) (quoting McBride v. Commonwealth, 24 Va. App. 30, 35, 480 S.E.2d 126, 128
(1997)).  Appellant's counsel also conceded at oral argument that a conditional guilty plea was
not entered in this case.  Although the Assistant Attorney General initially maintained at oral
argument that a conditional guilty plea had been entered into in this case as evidenced by a
statement in the transcript from counsel for Tahiri-Amine to the trial court that "we could enter a
conditional guilty plea," she ultimately conceded that she had not read the final order of the trial
court and that it was presumptively correct.  We also note that the trial court file contains no
written plea agreement, nor does the transcript reflect any colloquy evidencing a plea of guilty.
Therefore, we presume the court order is correct and that a conditional plea was not entered.

sentenced to twelve months in jail, with eleven months and ten days suspended on the driving under the influence conviction, and thirty days in jail with twenty-eight days suspended on the suspended license conviction.

On appeal, Tahiri-Amine contends that the trial court erred when it denied his motion to suppress the evidence because the police lacked reasonable suspicion that any criminal activity was afoot. For the following reasons, we affirm.

ANALYSIS

Motion to Suppress

Tahiri-Amine contends that he was "stopped" and detained by Lt. Watson ("Watson") and Officer Rollins ("Rollins") of the Henrico County Police Department without reasonable articulable suspicion that criminal activity was afoot to support such detention, and thus the identifying information obtained during the encounter which, in turn, resulted in Rollins learning that Tahiri-Amine's driver's license was suspended, was fruit of the poisonous tree and should have been suppressed.

When reviewing a trial court's denial of a motion to suppress, this Court considers the evidence given at both the suppression hearing and the trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and views the evidence "in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it." Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).

This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517

U.S. 690, 699 (1996)). However, "we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case." McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (citing Ornelas, 517 U.S. at 699). "'Ultimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed *de novo* on appeal.'" Ramey v. Commonwealth, 35 Va. App. 624, 628, 547 S.E.2d 519, 521 (2001) (quoting Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998)).

"The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). Viewed in this light and based on the totality of the evidence presented to the trial court, we hold that the trial court did not err in denying Tahiri-Amine's motion to suppress.

"The Fourth Amendment . . . protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Johnson v. Commonwealth, 26 Va. App. 674, 682, 496 S.E.2d 143, 147 (1998) (citation omitted). A police-citizen encounter is either consensual, a brief investigatory or "Terry" stop, or an arrest. McGee, 25 Va. App. at 198, 487 S.E.2d at 261. A brief investigatory stop "must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot." Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). However, a consensual encounter is not a seizure and does not need to be based on any suspicion of the individual's involvement in wrongdoing because it does not implicate the Fourth Amendment. Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citation omitted); McGee, 25 Va. App. at 198, 487 S.E.2d at 261. Likewise, "interrogation relating to one's identity or a request for identification by the

police does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984).

> "There is no 'litmus test' for determining whether an encounter is consensual or constitutes an illegal seizure. If, however, a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment."

Bandy v. Commonwealth, 52 Va. App. 510, 516, 664 S.E.2d 519, 522 (2008) (quoting Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003)).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement, . . . 'through means intentionally applied.'" Brendlin v. California, 551 U.S. 249, 254 (2007) (citations omitted). In determining whether a seizure has occurred,

> [v]arious factors have been identified as relevant . . . , including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.

Harris, 266 Va. at 32, 581 S.E.2d at 209 (citations omitted); see also Montague v. Commonwealth, 278 Va. 532, 539, 684 S.E.2d 583, 587 (2009).

In this case, the trial court found that Watson was investigating a report of several shots fired in the Oakway Court/Crowncrest area of Henrico County. Tahiri-Amine's vehicle was the only one seen in the area. Watson observed Tahiri-Amine pull to the curb and stop. Only then did Watson activate his emergency lights. Rollins arrived moments later, and Watson terminated his involvement in the incident. Rollins asked Tahiri-Amin "general questions, his name, information, if he had an I.D. card on him, driver's license and everything." Upon obtaining

Tahiri-Amine's identifying information, Rollins learned that Tahiri-Amine's license was suspended or revoked from a prior conviction for driving under the influence. Rollins then informed Tahiri-Amine that he was not allowed to drive, but as long as he left the car where it was legally parked and got a friend to pick him up it would be fine. Rollins left Tahiri-Amine, returned to his vehicle, and drove back up the road to continue observing the area. Rollins then watched Tahiri-Amine start his car and start to drive off. Rollins then stopped Tahiri-Amine at 4:21 a.m., and arrested him for driving on a suspended license and driving under the influence.

Tahiri-Amine argues that he was stopped by Watson and that the trial court erred in holding that it was a consensual encounter. From that premise, he further argues that Watson's observations did not rise to the required level of reasonable articulable suspicion, and thus Rollins's actions in learning his identity and that his license was suspended or revoked constituted "fruit of the poisonous tree" of the initial illegal stop. Thus, under the exclusionary rule the evidence obtained should have been excluded. Tahiri-Amine cites to Commonwealth v. Calloway, No. 0416-09-3 (Va. Ct. App. Aug. 4, 2009), an unpublished case, in support of his contention that the totality of the circumstances in this case do not rise to reasonable articulable suspicion. In that case, officers responded to a shots fired call, observed a car coming from the area where the call originated and going too fast to make a turn, and subsequently stopped the vehicle. The trial court granted the motion to suppress; however, on appeal this Court reversed the decision based on the facts that the police officer knew the defendant, he had a history with firearms, and the officer observed him bending forward as he approached the police vehicle. On these facts, the Court held that an officer, based on the totality of the circumstances, would have reasonable articulable suspicion.

The Commonwealth contends that the trial court was correct in holding that this was a consensual encounter not subject to the Fourth Amendment because Tahiri-Amine had stopped

his vehicle on his own prior to Watson activating his emergency lights and Rollins's arrival, and thus Rollins's request for identification was consensual and not an "exercise of police power pursuant to Code § 46.2-104." Brown v. Commonwealth, 17 Va. App. 694, 697, 440 S.E.2d 619, 621 (1994) ("We hold that the exercise of police power pursuant to Code § 46.2-104, the act requiring a person who has been operating a motor vehicle upon the public highways to produce an operator's license, is a restraint upon the individual's freedom of movement and constitutes a seizure of the person.").

The Commonwealth also cites to McCain, 261 Va. at 489, 545 S.E.2d at 544, in which the Supreme Court ruled that a request for identification does not constitute a seizure. In that case, the defendant was in a parked car when the officer turned on his spotlight and headlights illuminating the car, approached the parked car, and asked for identification. When he ran the information, the officer found that there were no outstanding warrants, however the defendant subsequently gave him permission to search the car. Defendant argued that he was seized when the officer asked him for identification. Id. The Supreme Court held that a seizure did not occur when the officer requested identification from the defendant without any show of force or authority such that a reasonable person would not believe he was free to leave. Id. at 491, 545 S.E.2d at 546. The Supreme Court also noted that

> In the present case, [the] Officer [] did not observe McCain operating a motor vehicle and did not require him to produce a driver's license pursuant to Code § 46.2-104. Instead, [the officer] approached [defendant's] vehicle, which was parked on the side of a road, and asked [defendant] and his companion "for some ID."

Id. at 490, 545 S.E.2d at 545.

In the present case, the officer's actions are similar to those taken by the officer in McCain. Officer Rollins asked Tahiri-Amine "general questions, his name, information, if he had an I.D. card on him, driver's license and everything." Nothing in the record indicates that he

- 6 -

demanded that Tahiri-Amine produce his driver's license or that he used force. In addition, like the officer in McCain, Rollins did not observe Tahiri-Amine drive his vehicle. Although two officers were present, only Rollins spoke with Tahiri-Amine, and Rollins actually informed Tahiri-Amine that he could leave as long as he left his car where it was legally parked and was able to get a friend to pick him up. Rollins then returned to his vehicle, and drove up the road leaving Tahiri-Amine free to leave. Thus, Rollins had not restrained Tahiri-Amine's movement in a way that would have constituted a seizure. "A seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's submission to an officer's assertion of authority." Id. at 491, 545 S.E.2d at 546 (citing Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Based on these facts, we hold that the trial court did not err in concluding that the encounter between Tahiri-Amine and Rollins was consensual and in denying Tahiri-Amine's motion to suppress. Because the Fourth Amendment was not implicated by Rollins's actions, we need not consider whether Tahiri-Amine's subsequent commission of the crime of driving away from the scene on a suspended or revoked license attenuated any possible "fruit of the poisonous tree" application resulting from Rollins's actions.

Affirmed.