COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Huff, Judges Petty and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1934-16-2                      JUDGE WILLIAM G. PETTY
                                                    APRIL 25, 2017
DEANTE LAPRE MAYO


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

J. Christian Obenshain, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Lauren Whitley, Deputy Public Defender, for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the decision of the trial court

granting Deante Lapre Mayo's motion to suppress evidence obtained after an encounter between

Mayo and police officers, which the trial court concluded was an unlawful seizure. Mayo

cross-appeals the trial court's denial of his motion to suppress evidence found in the rental car

Mayo was driving; Mayo argues this evidence was fruit of the unlawful seizure. We conclude

that the initial encounter between Mayo and the officers was consensual and that the subsequent

seizure was lawful; the trial court therefore erred in suppressing the evidence on that basis. We

further conclude that since Mayo had no standing to challenge the evidence seized from the

rental car, the trial court did not err in denying Mayo's motion to suppress it.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. In an appeal brought by the Commonwealth pursuant to Code § 19.2-398, we view the facts in the light most favorable to the prevailing party below, and we grant the party all reasonable inferences fairly deducible from that evidence. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). Accordingly, when considering the Commonwealth's appeal we view the facts in the light most favorable to Mayo, and when considering Mayo's cross-appeal we view the facts in the light most favorable to the Commonwealth.

Mayo filed a motion to suppress evidence obtained during a February 11, 2017 encounter between Mayo and four uniformed officers. The trial court found, and the parties agree, that when the encounter began the officers had no reasonable suspicion that Mayo had committed a crime. After learning that Mayo had outstanding warrants, the officers arrested him. During a struggle, Mayo discarded items including a phone, keys, and drugs; other items were found on his person in a subsequent search. The officers searched the rental car, which Mayo had been driving without the rental company's permission, where they found scales, a loaded gun inside a jacket, and clothing; they later found drugs and Mayo's wallet concealed behind the radio. Mayo made statements to the officers before being given Miranda warnings and made additional statements at the precinct. Mayo argued in his motion to suppress that all the evidence was the fruit of an unlawful seizure and should therefore be suppressed. Mayo also argued that the statements should be suppressed because admission would violate his protections under Miranda. The trial court agreed that the evidence obtained from Mayo's person and his statements were the fruit of an unlawful seizure; it granted the motion to suppress that evidence. The

Commonwealth appeals the decision. The trial court denied the motion to suppress the evidence found during the searches of the car on the basis that Mayo had no standing to challenge the search; Mayo cross-appeals that decision.

COMMONWEALTH'S APPEAL

Relying heavily on Brown v. Commonwealth, 17 Va. App. 694, 440 S.E.2d 619 (1994), Mayo argues that he was seized the moment an officer asked for Mayo's driver's license. The Commonwealth argues that the encounter between Mayo and the officers was not initially a detention and that the personal evidence was recovered during a lawful seizure. We agree.

"The determination whether a person has been seized within the meaning of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." Montague v. Commonwealth, 278 Va. 532, 537, 684 S.E.2d 583, 587 (2009).

"A person is seized for purposes of the Fourth Amendment when the police 'by means of physical force or show of authority' restrain that person's freedom of movement." Id. (quoting United States v. Mendenhall, 446 U.S. 544, 553-54 (1980)). "Conversely, a voluntary encounter between the police and a citizen does not constitute a seizure prohibited by the Fourth Amendment." Id. The Supreme Court reasoned in Montague that "even when the police do not have a reasonable suspicion that an individual may be engaged in criminal activity, they may approach that person and request information regarding the person's identity without violating the Fourth Amendment." Id. at 538, 684 S.E.2d at 587. "The Fourth Amendment also is not implicated when a person voluntarily responds to a police request to produce identification, even if the person's response later is used against him in a criminal prosecution." Id.

In Montague, officers encountered the defendant leaving an apartment complex to return to his car, which he had left running in the parking lot. The officers had no reasonable suspicion that the defendant had committed a crime, but they asked him if he lived in the complex. "When

[the defendant] replied that he did not live there, the police requested that [he] provide some information regarding his identity." Id. at 539, 684 S.E.2d at 588. The Court reasoned that the encounter with the defendant was consensual. The Court did not distinguish types of identification when it reasoned that "when the police do not have a reasonable suspicion that an individual may be engaged in criminal activity, they may approach that person and request information regarding the person's identity without violating the Fourth Amendment." Id. at 538, 684 S.E.2d at 587. "As long as the police do not convey, by word or deed, that compliance with their request is mandatory, there is no requirement that these encounters be based on an objective or particularized suspicion regarding the person approached." Id. The Court accordingly concluded that the defendant "was not seized until the police attempted to take him into custody upon learning of the outstanding arrest warrants." Id. at 539, 684 S.E.2d at 588.

Here, as in Montague, the officers approached Mayo while he was outside of his car and "requested that [he] provide some information regarding his identity." Id. at 538, 684 S.E.2d at 587. Although several officers were present, the words and deeds of the officers did not convey that the request for identification was mandatory. An officer first asked Mayo whether he had a driver's license; when Mayo said he did, the officer asked if he could see it. We realize that "most individuals will feel obligated to respond when asked questions by a police officer, but [the United States Supreme Court] has held that this fact alone will not convert a consensual encounter into a seizure." Id. No evidence indicated that Mayo felt intimidated or coerced by his conversation with the officer. Moreover, the passenger from the rental car felt free to leave the area, and the officers made no move to hinder his departure. In light of the facts of this case, we conclude that the officer's request for information regarding Mayo's identity was made during a consensual encounter.

When Mayo replied that his driver's license was in the residence rather than on his person, the officer had a reasonable suspicion to believe that Mayo had violated Code § 46.2-104, which requires the "operator of any motor vehicle . . . [to] have in his possession . . . his driver's license . . . ."[1] The officer then asked for Mayo's name and date of birth, which Mayo provided. It was only after the officers learned that Mayo had outstanding warrants for his arrest that Mayo was arrested and the evidence discovered. At the time the officers first asked Mayo for information regarding his identity, they did not have reasonable suspicion to believe Mayo had committed a crime. However, the request for information was during a consensual encounter; the subsequent search and seizure did not occur until the officers had reasonable suspicion, based upon Mayo's answers, that a traffic infraction had occurred.

Nevertheless, Mayo argues that this Court's decision in Brown v. Commonwealth holds that when an officer asks for a driver's license, rather than for identification in general, the person is seized for purposes of Fourth Amendment protections because Code § 46.2-104 requires a driver to produce a driver's license when asked by a police officer. The trial court adopted Mayo's position. It concluded that the officers had "made a mistake" by asking for a driver's license rather than "identification," resulting in an unlawful seizure of Mayo. Mayo's reliance on Brown is misplaced, however, because it ignores the Supreme Court's subsequent analysis in Branham v. Commonwealth, 283 Va. 273, 720 S.E.2d 74 (2012).

---

[1] The trial court asked the officer when during the encounter Mayo "was free to leave," and the officer answered Mayo was detained "[o]nce he advised he had no valid photo ID or driver's license on his person." The determination of whether a person is seized is an issue of law, Mendenhall, 446 U.S. at 555, and we are not bound by the officer's subjective opinion as to when the seizure began. See Fox v. Commonwealth, 43 Va. App. 446, 450, 598 S.E.2d 770, 771-72 (2004) ("[I]t is well established that '[p]olice actions are to be tested "under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved."'" (quoting Limonja v. Commonwealth, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989))). For purposes of analysis here, however, we will assume without deciding that Mayo was seized when he stated he did not have in his possession a driver's license.

In Branham, the Supreme Court clarified that "Code § 46.2-104, requiring the owner or operator of a motor vehicle to exhibit his driver's license to an officer for identification, applies only when such a driver has received a signal to stop from a law-enforcement officer." Id. at 280, 720 S.E.2d at 78. Apart from a signal to stop from a law-enforcement officer, the "request to see [a] driver's license [is] no more than a request." Id. This was true in Branham even though the driver was found by the police officer sitting in the driver's seat of his car while parked in the middle of a dirt road.[2]

Here, as in Branham, Mayo received no signal to stop while he was driving. Mayo stopped and parked of his own accord. The officers approached Mayo only after Mayo left the car and was walking to the residence. Code § 46.2-104, therefore, does not apply. In the absence of a signal for Mayo to stop his car, the request to see his driver's license was no more than a request.[3]

The trial court erred when it concluded that Code § 46.2-104 rendered the officer's request for a driver's license a seizure. The encounter was initially consensual, and the evidence was not obtained until after the officers had a reasonable suspicion to believe Mayo had violated Code § 46.2-104 and after the officers learned that Mayo had outstanding arrest warrants. Any evidence recovered from his person at that point was admissible as it was obtained during a search incident to a lawful arrest. We accordingly reverse the trial court's suppression, on the

---

[2] Although the Supreme Court did not expressly overrule Brown in its decision in Branham, it did implicitly reject Brown's holding that "the act of requiring a person who has been operating a motor vehicle upon the public highways to produce an operator's license is a restraint upon the individual's freedom of movement and constitutes a seizure of the person." Brown, 17 Va. App. at 697, 440 S.E.2 at 621.

[3] The Commonwealth also argues that, if the detention was unlawful, the trial court erred in finding Utah v. Strieff, 136 S. Ct. 2056 (2016), to be inapplicable. Because we conclude the initial encounter was not an unlawful seizure, we do not need to address the attenuation doctrine under Strieff.

- 6 -

basis of "fruit of the poisonous tree," of the evidence obtained from Mayo during his arrest and of his subsequent statements.[4]

MAYO'S CROSS-APPEAL

On cross-appeal, Mayo challenges the trial court's denial of his motion to suppress the evidence obtained from the searches of the rental car Mayo was driving. The trial court concluded Mayo had no standing to challenge the search of the rental car. We agree.

"[T]he exclusionary rule's benefits run only to those whose Fourth Amendment rights have been violated." United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) (quoting United States v. Givens, 733 F.2d 339, 341 (4th Cir. 1984)). "Only where a search intrudes upon a space as to which an individual has 'a legitimate expectation of privacy' will the search violate that individual's Fourth Amendment rights." Id. (quoting Rakas v. Illinois, 439 U.S. 128, 143 (1978)). In Wellons, the Fourth Circuit Court of Appeals held that an unauthorized driver of a rental car has no legitimate privacy interest in the car and, therefore, the search of the rental car could not violate the unauthorized driver's Fourth Amendment rights. Id.; United States v. Dorsey, 2017 U.S. Dist. LEXIS 21112, at *6-7 (D.S.C. Feb. 15, 2017).

The Supreme Court's reasoning in Bell v. Commonwealth, 264 Va. 172, 563 S.E.2d 695 (2002), is also instructive. In Bell, the Court held that appellant did not carry his "burden of proving that he had a legitimate expectation of privacy in the vehicle so as to confer standing to challenge the search." Id. at 190, 563 S.E.2d at 708. The appellant in Bell had been driving the car, had the keys in his possession, had parked it in a private lot, and had locked the car with his possessions inside. Nevertheless, the Court, citing Wellons with approval, concluded appellant

---

[4] The trial court did not reach Mayo's alternative argument that his statements should be suppressed based on his argument that his Fifth Amendment and Miranda protections were violated. We express no opinion on the merit of these arguments. On remand, the trial court may address the alternative arguments Mayo raised in his motion to suppress.

had no legitimate expectation of privacy because he did not own the car and had not established that he was authorized to have the car in his possession when it was searched. Id. As an unauthorized driver, the appellant "lacked the requisite standing to challenge the search of the vehicle." Id.

Here, Mayo failed to establish that he was authorized to drive the rental car or to be in possession of it. Although he had been driving the car and had the keys in his possession, he admitted that he was not an authorized driver on the rental agreement. Accordingly, he had no legitimate privacy interest in the rental car and had no standing to challenge the searches of the vehicle or seizure of the evidence found therein.

CONCLUSION

The trial court erred in concluding that the evidence obtained from Mayo's person, the evidence Mayo discarded, and Mayo's statements were the fruit of an unlawful seizure; we reverse. We affirm the trial court's denial of Mayo's motion to suppress in regard to evidence obtained from searches of the rental car because Mayo has no standing to challenge those searches or the subsequent seizure of the evidence. We remand to the trial court for further proceedings consistent with this opinion, including ruling on Mayo's argument that his Fifth Amendment and Miranda protections were violated.

Affirmed in part, reversed in part, and remanded.