# ELBERT LAMONT MCCAIN

# V.

# COMMONWEALTH OF VIRGINIA

Record No. 001989

April 20, 2001

Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Lemons, JJ.,
and Whiting, S.J.

*S. Jane Chittom (Public Defender Commission*, on brief), for appellant.

*H. Elizabeth Shaffer, Assistant Attorney General (Mark L. Earley, Attorney General*, on brief), for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we consider 1) whether a police officer's search of a defendant and his automobile violated the defendant's Fourth Amendment rights; and 2) whether the evidence is sufficient to support the defendant's convictions.

Elbert Lamont McCain was indicted for possession of cocaine with the intent to distribute, in violation of Code § 18.2-248, and for possession of a firearm while possessing cocaine with the intent to distribute, in violation of Code § 18.2-308.4(B). McCain was convicted of both offenses in a bench trial in the Circuit Court of the City of Danville and was sentenced to seven years' imprisonment and a fine of $700 on the cocaine conviction, and to three years' imprisonment on the firearm conviction. The court suspended a portion of these sentences on certain terms and conditions.

McCain appealed from his convictions to the Court of Appeals, which affirmed the trial court's judgment in an unpublished opinion. *McCain v. Commonwealth*, Record No. 2368-99-3 (July 18, 2000). We awarded McCain this appeal.

We will state the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court. *Tarpley v. Commonwealth*, 261 Va. 251, 253, 542 S.E.2d 761, 763 (2001); *Dobson v. Commonwealth*, 260 Va. 71, 73, 531 S.E.2d 569, 570 (2000); *Commonwealth v. Taylor*, 256 Va. 514, 516, 506 S.E.2d 312, 313 (1998). At about 2:00 a.m. on March 16, 1999, Richard B. Thomas, a police officer for the City of Danville, was patrolling an area around Grove and Gay Streets after the police had received several reports of drug activity in the area. In front of an apartment building on Grove Street, Thomas saw McCain sitting in the driver's seat of a parked car, and another man was seated next to him. After observing the parked car, Thomas drove around the block and requested assistance from a police "dispatcher."

Thomas returned to Grove Street and stopped his vehicle behind the parked car. He observed a woman whom he had not previously seen leaning into the car. Thomas testified that he illuminated the parked car with his automobile headlights and with a spotlight.

As Thomas stepped from his vehicle and approached the parked car, the woman began to walk away. When Thomas asked what she was doing, she replied that she was "talking with her brother" and continued walking away from the car. Thomas testified that he returned to the parked car and shined his flashlight into the back seat "to make sure that there [was] nothing that [was] going to surprise me." When Thomas asked McCain "what was going on," McCain

responded that he had come to see his brother who lived in the nearby apartment building.

Thomas asked McCain and his passenger, Samuel Glass, for identification. McCain gave Thomas a valid driver's license, and Glass provided Thomas his name, social security number, and address. Thomas testified that he "ran both of their social security numbers, and checked [for outstanding] warrants." There were no warrants outstanding for either man.

Thomas returned McCain's driver's license to him and asked if there were any weapons or contraband in the vehicle. McCain replied that there were not and, when Thomas asked for permission to search the car, McCain consented. Both men complied with Thomas's request that they step out of the car.

Thomas approached McCain and informed him that for safety reasons, he needed to "pat [him] down" to determine if he had a weapon. Thomas testified that McCain became somewhat irate and asked Thomas why a search of his person was necessary. Thomas again told McCain that the pat-down search was for Thomas's safety.

In response, McCain began to turn away from Thomas, stating loudly that he did not want Thomas to touch him. When McCain walked away from Thomas onto the sidewalk, Thomas conducted a pat-down search of Glass, which revealed nothing unusual. After another police officer arrived on the scene, Thomas again focused his attention on McCain.

By that time, McCain had walked about 35 feet to the front door of the apartment building and banged loudly on the door. When no one answered the door, he walked to an area to the right of the door behind a set of steps that led to the second floor of the building. Through decorative openings in a concrete wall that separated him from McCain, Thomas saw the shadow of an arm "reach out," and he heard the sound of a metal object making contact with another metal object. McCain then returned from behind the steps and walked back toward the front door.

Thomas and the other police officer approached McCain, and Thomas again explained that he intended to conduct a pat-down search of McCain for the officers' safety. McCain acquiesced to the pat-down search, and Thomas did not find any weapons on McCain's person.

Thomas retraced McCain's steps to the area behind the stairs and saw a metal grocery cart that contained a handgun. Thomas walked

back toward McCain, showed him the handgun, and asked, "What [is] this?" McCain reacted by running away.

Thomas chased McCain, calling out that he was under arrest for carrying a concealed weapon. Thomas caught McCain and, after a brief struggle, succeeded in placing handcuffs on him. As other police officers who had arrived on the scene assisted Thomas in lifting McCain from the ground, Thomas found a digital scale immediately beneath McCain's person.

Thomas searched McCain and found a small bag containing a white "rock substance," later determined to be cocaine, in McCain's right front pocket. Another officer found a change purse and $937 in cash in one of McCain's pockets. Thomas opened the change purse and found a small plastic bag containing a white, powdery material that also was determined to be cocaine.

Thomas conducted an inventory search of McCain's car and found a pager, a cellular telephone, and a plastic bag containing two, large "off-white" substances in rock form that were individually wrapped. These "off-white" substances later were determined to be cocaine and had a combined weight of about 55 grams.

McCain testified in his own defense and stated that Thomas approached his vehicle and asked, "Can I see your license and registration?" McCain testified that after he produced his driver's license and Glass gave Thomas "his name and stuff," Thomas directed them to get out of the car. McCain stated that he never consented to a patdown search, and that while Thomas did not specifically ask to search his car, McCain did tell Thomas to "look all you want" with his flashlight. Finally, McCain testified that he did not know how the gun "got in [the grocery] cart."

Before trial, McCain filed a motion to suppress the evidence seized by the police alleging, among other things, that McCain did not consent to a search of his person and that the officers lacked probable cause to conduct any searches. At trial, the court denied the motion and, at the conclusion of all the evidence, found McCain guilty of the crimes charged.

The Court of Appeals held that the trial court did not err in denying McCain's motion to suppress the evidence. Relying on its decision in *Brown v. Commonwealth*, 17 Va. App. 694, 440 S.E.2d 619 (1994), the Court ruled that Thomas had effected a seizure of

McCain by "demanding"[1] McCain's driver's license and conducting a check for outstanding warrants. The Court concluded that the seizure was lawful based on its finding that Thomas's action "was supported by reasonable suspicion."

The Court held that McCain's flight after Thomas showed him the handgun retrieved from the grocery cart, when viewed together with all the circumstances of the case, created probable cause to arrest McCain for possession of a concealed weapon. From this evidence of probable cause, the Court concluded that the police officers lawfully searched McCain incident to his arrest on the weapon charge, and that the search of his car was lawful based on the evidence that McCain consented to the search. The Court also held that the evidence was sufficient to support McCain's convictions.

On appeal to this Court, McCain first argues that the police searches of his person and his car violated his Fourth Amendment rights. Relying on the Court of Appeals' decision in *Brown*, McCain argues that he was "seized" at the time Thomas asked for his identification, and that this seizure was unlawful because Thomas did not have grounds to support a reasonable suspicion of criminal activity when he approached the parked car. McCain contends that all evidence obtained after this seizure, including the handgun, was a fruit of the unlawful seizure and should have been suppressed.

McCain also asserts that Thomas did not have probable cause to arrest him on the firearm charge and to search him because the evidence that Thomas observed the shadow of an arm and heard the sound of one metal object hitting against another metal object did not constitute evidence of criminal activity. McCain further contends that his flight from the scene was merely evidence of his response to Thomas's "hostility." We disagree with McCain's arguments.

■ An assertion that a person was "seized," within the meaning of the Fourth Amendment, presents a mixed question of law and fact that is reviewed *de novo* on appeal. *Reittinger v. Commonwealth*, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000); *Weathers v. Commonwealth*, 32 Va. App. 652, 658, 529 S.E.2d 847, 850 (2000); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Likewise, an assertion that the police lacked probable cause to arrest a defendant presents a question of both law and fact, which is reviewed *de novo* on appeal. *Reittinger*, 260 Va. at 236, 532 S.E.2d at 27; *Weathers*, 32 Va. App.

---

[1] Although the Court stated that Thomas "demanded" McCain's driver's license, Officer Thomas testified that he "asked for some ID."

at 657, 529 S.E.2d at 849-50; *see Ornelas v. United States*, 517 U.S. 690, 699 (1996).

In considering such questions, the appellate court is required to give deference to the factual findings of the trial court and to determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements. *Reittinger*, 260 Va. at 236, 532 S.E.2d at 27; *Weathers*, 32 Va. App. at 658, 529 S.E.2d at 850; *see Ornelas*, 517 U.S. at 696-97. The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error. *Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied*, 449 U.S. 1017 (1980); *Weathers*, 32 Va. App. at 658, 529 S.E.2d at 850.

Initially, we hold that the Court of Appeals erred in concluding that Officer Thomas effected a seizure of McCain when he requested identification from McCain and conducted a check for outstanding warrants. First, the Court of Appeals' reliance on *Brown* was misplaced. There, the Court of Appeals held that "the exercise of police power pursuant to Code § 46.2-104, the act of requiring a person who has been operating a motor vehicle upon the public highways to produce an operator's license, is a restraint upon the individual's freedom of movement and constitutes a seizure of the person." 17 Va. App. at 697, 440 S.E.2d at 621.

In the present case, Officer Thomas did not observe McCain operating a motor vehicle and did not require him to produce a driver's license pursuant to Code § 46.2-104. Instead, Thomas approached McCain's vehicle, which was parked on the side of a road, and asked McCain and his companion "for some ID." Therefore, we conclude that *Brown* is inapposite because its holding is based on an issue of law and facts materially different from the issue and the facts before us.

A person is "seized" within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable person would believe that he was not free to leave the scene of an encounter with the police. *United States v. Mendenhall*, 446 544, 554 (1980); *Cochran v. Commonwealth*, 258 Va. 604, 608, 521 S.E.2d 287, 289 (1999), *cert. denied*, 529 U.S. 1075 (2000); *Parker v. Commonwealth*, 255 Va. 96, 101, 496 S.E.2d 47, 50 (1998). Thus, a seizure occurs when a law enforcement officer, by physical force or some display of authority, restrains in some manner a citizen's free-

dom of movement. Only when such restraint is imposed is there a basis for invoking Fourth Amendment safeguards. *Mendenhall*, 446 U.S. at 553; *Parker*, 255 Va. at 101, 496 S.E.2d at 50; *Baldwin v. Commonwealth*, 243 Va. 191, 196, 413 S.E.2d 645, 647 (1992).

The Supreme Court has detailed examples of circumstances that may indicate that a seizure has occurred. Such examples include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554; *Parker*, 255 Va. at 101, 496 S.E.2d at 50; *Baldwin*, 243 Va. at 196, 413 S.E.2d at 648. In contrast, a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure. *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 216 (1984); *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion); *Baldwin*, 243 Va. at 196-97, 413 S.E.2d at 648.

Here, Officer Thomas requested identification from McCain without any show of force or display of authority that would have led a reasonable person to believe that he was not free to leave the scene of the encounter. After McCain provided identification to Thomas, McCain consented to a search of his car and stepped out of the automobile. He walked away from Thomas after stating that he did not want to submit to a pat-down search, and walked to the apartment building door and then to the area behind the set of steps that led to the second floor. Thus, at that point, Thomas had not restrained McCain's movement in any manner that would have constituted a seizure of his person. A seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's submission to an officer's assertion of authority. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *Washington v. Commonwealth*, 29 Va. App. 5, 10-11, 509 S.E.2d 512, 514 (1999).

We next conclude that Thomas had probable cause to arrest McCain on Thomas's discovery of the handgun and McCain's attempted flight from the scene.[2] Thomas retrieved the handgun after observing McCain walk behind a decorative concrete wall, seeing the shadow of an arm "reach out," and hearing the sound of one metal

---

[2] We do not discuss the pat-down search of McCain that preceded Thomas's discovery of the handgun because that search was consensual.

object hitting against another metal object. Nobody was near McCain at the time, and the handgun was found in the metal grocery cart. McCain's flight after Thomas retrieved the handgun and asked McCain about it was also probative evidence that McCain had possessed the weapon. *See Lovitt v. Commonwealth*, 260 Va. 497, 512, 537 S.E.2d 866, 876 (2000); *Clagett v. Commonwealth*, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996), *cert. denied*, 519 U.S. 1122 (1997); *Jones v. Commonwealth*, 208 Va. 370, 374, 157 S.E.2d 907, 910 (1967).

From these facts and circumstances, Officer Thomas had probable cause to arrest McCain for carrying a concealed weapon. Thus, the search of McCain's person following his arrest was valid. *United States v. Robinson*, 414 U.S. 218, 224 (1973); *Wright v. Commonwealth*, 222 Va. 188, 192-93, 278 S.E.2d 849, 852 (1981); *Italiano v. Commonwealth*, 214 Va. 334, 336, 200 S.E.2d 526, 528 (1973).

After McCain was arrested, the police conducted a search of his car. Since this inventory search was incident to the lawful arrest of McCain, the search of the vehicle was valid. *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976); *Boggs v. Commonwealth*, 229 Va. 501, 511, 331 S.E.2d 407, 415 (1985), *cert. denied*, 475 U.S. 1031 (1986); *Hamby v. Commonwealth*, 222 Va. 257, 260-62, 279 S.E.2d 163, 165-66 (1981); *Reese v. Commonwealth*, 220 Va. 1035, 1039, 265 S.E.2d 746, 749 (1980).

We next consider McCain's argument that the evidence is insufficient to convict him of either offense. McCain contends that the quantity of cocaine found, about 60 grams, is not sufficient to prove an intent to distribute and instead raises an inference that the drugs were for McCain's personal use. McCain notes that law-abiding citizens commonly carry cellular telephones and pagers, and that the $937 in cash found on his person is consistent with his 19 years of employment at Dan River Mills. We are not persuaded by McCain's arguments.

When a defendant challenges the sufficiency of the evidence on appeal, the reviewing court must give the judgment of the trial court sitting without a jury the same weight as a jury verdict. *Tarpley*, 261 Va. at 256, 542 S.E.2d at 763; *Hickson v. Commonwealth*, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999); *Taylor*, 256 Va. at 518, 506 S.E.2d at 314. The appellate court has the duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidence to support

it. Code § 8.01-680; *Tarpley*, 261 Va. at 256, 542 S.E.2d at 763; *Taylor*, 256 Va. at 518, 506 S.E.2d at 314; *Commonwealth v. Jenkins*, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998).

Several factors may constitute probative evidence of intent to distribute a controlled substance. These factors include the quantity of the drugs seized, the manner in which they are packaged, and the presence of an unusual amount of cash, equipment related to drug distribution, or firearms. *Dukes v. Commonwealth*, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984); *Colbert v. Commonwealth*, 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978); *Wells v. Commonwealth*, 32 Va. App. 775, 782, 531 S.E.2d 16, 19 (2000); *Clarke v. Commonwealth*, 32 Va. App. 286, 304-05, 527 S.E.2d 484, 493 (2000).

Of the approximately 60 grams of cocaine found on McCain and in his car, 55 grams were packaged in two individually wrapped blocks in a single plastic bag. The quantity of the cocaine and the manner of its packaging support the finding that McCain intended to distribute the cocaine, and there is no evidence in the record that McCain was a user of cocaine. This evidence, in addition to the evidence of a relatively large amount of cash in McCain's possession, and the presence of scales, a semi-automatic handgun, and a pager, is sufficient to establish beyond a reasonable doubt that McCain possessed the cocaine with the intent to distribute it.

McCain next contends that the evidence is insufficient to establish his guilt on the firearm charge, and notes that Thomas did not observe any "suspect bulges" in McCain's clothing when Thomas first asked if he could conduct a pat-down search. McCain argues that Thomas's testimony that he saw a shadow of an arm and heard the sound of "metal on metal" proves only that it was possible for McCain to have discarded the gun, not that he did so. McCain asserts that the Commonwealth proved only his proximity to the handgun, which was insufficient to establish that he possessed it. We disagree with McCain's arguments.

Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony. *Williams v. Commonwealth*, 259 Va. 377, 387, 527 S.E.2d 131, 137 (2000); *Chichester v. Commonwealth*, 248 Va. 311, 329, 448 S.E.2d 638, 650 (1994), *cert. denied*, 513 U.S. 1166 (1995); *Derr v. Commonwealth*, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). Here, based on the circumstantial evidence presented, the trier of fact could conclude that McCain had the handgun on his person when he initially refused to consent to a pat-down search.

As stated above, after observing McCain walk behind the decorative concrete wall, Thomas saw the shadow of an arm reach into the area where the grocery cart was located, and Thomas heard the sound of one metal object hitting against another metal object. McCain consented to a pat-down search after these events occurred. No one else was present in the area where the grocery cart was located, and the handgun was found in the metal cart. This evidence, combined with the evidence of McCain's flight when confronted with the handgun and the evidence of his possession of cocaine with the intent to distribute, was sufficient to establish McCain's guilt beyond a reasonable doubt on the firearm charge.

For these reasons, we will affirm the Court of Appeals' judgment.

*Affirmed.*