COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bumgardner and Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY

v.    Record No. 0156-02-2        JUDGE RUDOLPH BUMGARDNER, III
                                           JUNE 4, 2002

JAWESCAMEL LAJUAN TERRY

COMMONWEALTH OF VIRGINIA

v.    Record No. 0353-02-2

STEPHEN ANTOINE TERRY


              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      William R. Shelton, Judge

          Susan M. Harris, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          briefs), for appellant.

          (Sharon A. Fitzgerald; Eck, Collins &
          Marstiller, on brief), for appellee
          Jawescamel Lajuan Terry.

          William P. Irwin, V (Bowen, Bryant,
          Champlin & Carr, on brief), for appellee
          Stephen Antoine Terry.


     The Commonwealth appeals the suppression of evidence seized

as proof Jawsecamel Lajuan Terry and Stephen Antoine Terry

robbed and used a firearm in the commission of robbery.  The

police found the cash, skullcap, cell phone, and pellet gun in

the bedroom of the defendants' residence.  The trial court

---------

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

concluded the police conducted an illegal search and granted the motion to suppress. We conclude the actions of the police while in the residence did not constitute a search and reverse the decision to suppress the evidence.

The victim reported he had been robbed in front of 4700 Mason Woods Court shortly after delivering pizza there. He described the robber as "a black male, approximately 20 years of age, wearing a white T-shirt, black pants or jeans, [and he] displayed a handgun." The robber took $36 cash and a cell phone, which played a distinctive jingle when dialed.

Officer Zoffuto went to the residence with the victim. He received permission to enter the residence and inquire about the robbery. The officer observed four men in the house including both defendants. The officer stayed in the foyer, living room, and kitchen areas where the four men ate pizza while talking with the officer. The officer noted defendant Jawsecamel Terry and his clothing fit the description of the robber.

The officer stepped outside and spoke with two other officers who informed him that a police dog had tracked the robber to the back door of the residence. Officer Zoffuto got his cell phone and returned to the residence. From the kitchen, he used his cell phone to dial the victim's cell phone number. The distinctive ring of the victim's phone sounded from an interior room. The officer ordered the four men to the floor as he went toward the sound. He opened the door to a bedroom and

-

saw the cell phone, cash, and a skullcap on the bed.  He did not seize the items but left and obtained a search warrant.  While executing the warrant, the officers found the pellet gun.

The trial court ruled, "the use of the telephone to locate contraband was an illegal search."  We conclude that the officer did not conduct a search when he dialed the victim's phone number on his own cell phone.  "[T]he appellate court is required to give deference to the factual findings of the trial court and to determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements."  McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citations omitted).

The officer was lawfully inside the residence.  The occupants consented to his coming inside to ask questions while they ate their pizza.  The officer never went beyond the area at the front of the residence where he had permission to be.  When the officer dialed his phone from the kitchen, he did not violate any expectation of privacy recognized in Katz v. United States, 389 U.S. 347 (1967).  It was reasonable conduct by the officer while in the kitchen with consent.

Dialing the number while in the kitchen was related to the original purpose of his entry.  It did not constitute an additional invasion of the defendants' privacy interests such as found in Arizona v. Hicks, 480 U.S. 321, 324-25 (1987).  The act of dialing a cell phone did not constitute the type of conduct

-

proscribed in Kyllo v. United States, 533 U.S. 27 (2001). When dialing his cell phone, the officer did not use sense enhancing technology not in "general public use" to obtain information from within a home.

When the victim's cell phone responded to being dialed, the officer was permitted to use his sense of hearing under the plain view doctrine of Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). The officer was lawfully in a place to hear the sound, and it was immediately apparent that the distinctive sound came from the stolen telephone, contraband subject to seizure.

The moment the officer heard the distinctive ring, he had probable cause to believe the robber, who had been armed with a gun, was in the house. The stolen property was in the house, a dog had tracked the robber to the house, and Jawsecamel Terry fit the description of the robber. The officer was lawfully present and had reasonable belief based on specific and articulable facts that someone with a gun was in the interior of the house. The officer was permitted to conduct a protective sweep of the area posing the danger. Maryland v. Buie, 494 U.S. 325, 333 (1990). "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger." Id. at 336.

Based on the facts known at the moment the officer heard the cell phone ring, he was justified in conducting a protective sweep to determine whether someone else was in the house. Upon

-

opening the door of the bedroom, he saw the ringing cell phone, the cash, and a skullcap in plain view.  When he determined no one was in the room, he did not seize the evidence but returned to the kitchen, secured the premises, and went to the magistrate to secure a search warrant.  His actions were within the scope permitted under <u>Buie</u>.

We conclude the officer did not seize the evidence during an illegal search.  Accordingly, we reverse the decision to suppress their use as evidence.

<u>Reversed and remanded.</u>

-