COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


DAVID FRANKLIN TAYLOR

MEMORANDUM OPINION[*] BY
v.      Record No. 0159-06-2                    JUDGE RANDOLPH A. BEALES
                                                FEBRUARY 20, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

Gregory W. Franklin, Senior Appellate Defender (Office of the
Public Defender, on briefs), for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


David Franklin Taylor (appellant) appeals from his conviction for carrying a concealed

weapon in violation of Code § 18.2-308.2.  He argues the trial court erred in denying his motion to

suppress.  For the following reasons, we affirm.

BACKGROUND

"'On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'"

Kyer v. Commonwealth, 45 Va. App. 473, 477, 612 S.E.2d 213, 215 (2005) (*en banc*) (quoting

Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003)).

On July 17, 2005, Officers Mills and Gardner encountered appellant while they were

patrolling in the Hillside Court area within the city of Richmond.  Hillside Court is a Richmond

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Redevelopment and Housing Authority property and is posted "no trespassing." Officer Gardner characterized Hillside Court as a high-crime area and an open-air drug market.

The officers noticed appellant peeking around the corner of a building looking toward their police vehicle. Upon seeing the officers pull up and park their vehicle, appellant and another male proceeded to the front porch of a residence. Officer Gardner testified that appellant stood on the porch of the residence and knocked lightly on the door, "like he wasn't trying to get somebody to answer the door, just trying to act like he was, you know, trying to go inside."

Suspecting the two men were trespassing, the officers approached on foot. Gardner asked them if they lived in Hillside Court. Appellant's companion informed the officers that he "lived in the area," but appellant remained silent. Gardner asked them both for identification, asked if either had any weapons on his person, and asked if each would mind pulling up his shirt.

According to Gardner, appellant said nothing and pulled up his shirt. Officer Mills noticed a bulge in the front right portion of appellant's shorts. Mills tapped the bulge with his flashlight and "heard what sounded like my flashlight tapping a heavy metal object." Suspecting this to be a firearm, Mills instructed appellant to raise his hands, patted the object with his hands, and recognized it as a firearm. The officers handcuffed appellant and seized the firearm.

At the hearing on the motion to suppress, appellant recalled that he responded to the officer's request to lift his shirt by raising his arms into the air and saying, "What for?" According to appellant, the officers then grabbed him, put him in handcuffs, seized the weapon, and took him to the police vehicle. Appellant further stated that neither officer patted him down, nor did either one use a flashlight to tap the bulge in his pocket. Appellant explained that his cousin was the individual peeking around the corner of the building.

The trial court denied the motion to suppress.[1] The judge concluded that the stop was proper, but thought the officers' request for the two men to lift up their shirts was improper. Nevertheless, the trial court accepted appellant's testimony and found that appellant raised *his hands* into the air "on his own" – not at the officer's direction – which ironically allowed the officers to see the bulge in his pants. The trial court held the officers then had reasonable suspicion to justify a pat down.

Appellant entered a conditional guilty plea and was sentenced to four years of incarceration with two years suspended. This appeal followed.

ANALYSIS

The only question before this Court on appeal is whether the trial court erred in denying appellant's motion to suppress. Initially we note,

> "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed *de novo* on appeal. In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)).

The United States Supreme Court further discussed in Ornelas the legal standards of reasonable suspicion and probable cause:

> They are commonsense, nontechnical conceptions that deal with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 231 (1983). As such, the standards are "not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. We have described reasonable suspicion simply as "a particularized and objective basis" for suspecting the

---

[1] The trial court initially did not give a reason for its ruling or make any findings on the record. At a later hearing, however, the trial judge explained the ruling in detail.

person stopped of criminal activity, United States v. Cortez, 449 U.S. 411, 417-418 (1981), and probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.

517 U.S. at 695-96 (additional citations omitted). "The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).

"'Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause.'" Blevins v. Commonwealth, 40 Va. App. 412, 420-21, 579 S.E.2d 658, 662 (2003) (quoting Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995)). "[A] consensual encounter does not require any justification and may be terminated at will by the individual." White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 665 (2004). Normally, "a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure." McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001).

Here, Officers Mills and Gardner initiated a consensual encounter with appellant and his companion by asking for identification and asking whether either had any weapons on his person. Gardner then asked the men "if they would mind pulling up their shirt." According to appellant's own version of the events, he did not comply by raising his shirt but, instead, raised his arms into the air and exclaimed, "What for?" The trial judge accepted appellant's testimony on this point and specifically found, as a fact, that by raising his arms into the air, appellant

- 4 -

revealed a bulge in his clothing. Though appellant urges this Court to reject that finding, we refuse to do so since it is not plainly wrong and is, in fact, consistent with appellant's own testimony.[2]

The bulge in appellant's pants, when combined with other facts present such as the officers' knowledge of the character of the neighborhood and the furtive gestures and actions of the two men, gave the officers reasonable suspicion to believe appellant might be concealing a weapon, and, accordingly, they were justified in their efforts to investigate further. See Adams v. Williams, 407 U.S. 143, 146 (1972) ("'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons." (quoting Terry v. Ohio, 392 U.S. 1, 24 (1968))).

Therefore, then possessing reasonable suspicion to believe appellant might be armed, Officer Mills next tapped the bulge with his flashlight. As he testified, Mills heard the flashlight contact a "heavy metal object," which he then believed was a weapon. At this point, we hold the officers possessed probable cause to believe appellant was armed and, accordingly, were justified in searching for a weapon, seizing that weapon, and arresting appellant.

CONCLUSION

For the foregoing reasons, we hold the trial court did not err in denying appellant's motion to suppress. We, accordingly, affirm his conviction.

Affirmed.

---

[2] On brief, appellant argues, "It is farfetched to believe that [appellant] just happened to accidentally do exactly what he had just been instructed to do," and, therefore, appellant actually complied with the officer's allegedly improper request. However, appellant actually testified that he raised *his hands* (not his shirt) up and exclaimed, "What for?" As the trial court reasonably concluded, such action is more consistent with protest and a refusal to comply with the officer's request.