COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia


KARSTEN OBED ALLEN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1124-10-1                     JUDGE WILLIAM G. PETTY
                                                          MAY 3, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

Christopher P. Reagan (Christopher P. Reagan, P.C., on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Karsten Obed Allen was convicted of possession of cocaine with intent to distribute, in

violation of Code § 18.2-248.  On appeal, Allen assigns error to the trial court's denial of his

motion to suppress.  Allen argues that when a police officer initiated conversation with him and

requested his identification shortly after Allen had gotten out of his car, the officer seized him

within the meaning of the Fourth Amendment, without reasonable suspicion of criminal activity.

For the reasons discussed below, we conclude that the trial court did not err in denying Allen's

motion to suppress.  Therefore, we affirm the conviction.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On the afternoon of April 23, 2008, Detective B.A. Langston and Detective Sorg were on patrol in a marked police car in Newport News. They were in plain clothes, wearing badges and vests that said "police" on the back. The detectives saw Allen driving a red car, followed him for about a couple of miles, and then saw him pull into a parking lot, park his car, and get out. The detectives parked a few spaces away from where Allen had parked, and Detective Langston got out of the police car and asked Allen if he could speak to him. Allen agreed to speak with Langston, and Langston asked Allen if he had any ID and if Allen minded if Langston checked it out. Allen gave Langston a Virginia identification card. Langston then asked Allen if his driver's license was suspended, and Allen replied, "Yeah, I'm suspended." Langston ran Allen's ID number over the portable radio to the dispatch center and discovered that Allen's driver's license was suspended and that Allen had a prior conviction for driving with a suspended license. Detective Sorg then joined Langston and Allen, obtained Allen's information from Langston, and went back to the police car, where he discovered via computer that Allen had an outstanding capias from traffic court.

Langston and Sorg arrested Allen for driving with a suspended license. A search incident to the arrest revealed crack cocaine in Allen's pants. Allen moved to suppress all evidence obtained as a result of what he alleged was an unlawful seizure.

"An assertion that a person was 'seized,' within the meaning of the Fourth Amendment, presents a mixed question of law and fact that is reviewed *de novo* on appeal." McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001). In considering such a question, we defer to the trial court's factual findings, but we "determine independently whether, under the

law, the manner in which the evidence was obtained satisfies constitutional requirements." Id. at 490, 545 S.E.2d at 545.

It is well established that "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002). No level of suspicion is necessary to justify non-coercive questioning, including requests for identification. Id. at 201; Montague v. Commonwealth, 278 Va. 532, 538, 684 S.E.2d 583, 587 (2009). "In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. '[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.'" Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty., 542 U.S. 177, 185 (2004) (alteration in original) (quoting INS v. Delgado, 466 U.S. 210, 216 (1984)); see also McCain, 261 Va. at 491, 545 S.E.2d at 546. Furthermore, "[t]he Fourth Amendment also is not implicated when a person *voluntarily responds* to a police request to produce identification." Montague, 278 Va. at 538, 684 S.E.2d at 587 (emphasis added).

It is true that certain circumstances surrounding police questioning may indicate the occurrence of a Fourth Amendment seizure, such as "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" McCain, 261 Va. at 491, 545 S.E.2d at 545 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)). However, none of these factors are present in this case. Detective Langston approached Allen by himself in a non-threatening manner and did not touch or handle his firearm. Furthermore, there is no evidence that Langston touched Allen while questioning him or used anything other than

- 3 -

ordinary and casual language and demeanor in talking with Allen. Thus, it appears that Allen voluntarily responded to Detective Langston's request to speak with him and to check out his identification.

However, Allen argues that this was not a general consensual encounter, but was rather a seizure under the Fourth Amendment, because of the requirements of Code § 46.2-104. That section states:

> The owner or operator of any motor vehicle, trailer, or semitrailer shall stop on the signal of any law-enforcement officer who is in uniform or shows his badge or other sign of authority and shall, on the officer's request, exhibit his registration card, driver's license, learner's permit, or temporary driver's permit and write his name in the presence of the officer, if so required, for the purpose of establishing his identity.

Code § 46.2-104. As Allen notes, "the exercise of police power pursuant to Code § 46.2-104, the act of requiring a person who has been operating a motor vehicle upon the public highways to produce an operator's license, is a restraint upon the individual's freedom of movement and constitutes a seizure of the person." Brown v. Commonwealth, 17 Va. App. 694, 697, 440 S.E.2d 619, 621 (1994). Allen contends there is no material distinction between an officer asking for an operator's license and an officer asking for identification. He argues that a reasonable person who had just parked his vehicle and was walking away from it would have interpreted Detective Langston's request for identification as a command to stop and produce a driver's license pursuant to Code § 46.2-104. Based on the facts of this case, we disagree.

First, Langston did not "signal" Allen to stop pursuant to Code § 46.2-104. Langston and Sorg had not signaled Allen to stop at any time while Allen was driving. They never activated the emergency lights on their police car or gave any other indication to Allen that they wished for him to pull over or stop. Rather, they simply followed Allen while he was driving and then parked nearby to where Allen chose to park. Langston got out of the police car and asked Allen

if he minded if Langston talked with him. This was not a command to stop and comply with any authoritative directives of the police. Langston's simple, casual request to talk with Allen did not constitute a command or "signal" for Allen to stop within the meaning of Code § 46.2-104. It was a request to speak with Allen, not a command for Allen to stop. Thus, there was no exercise of police power pursuant to Code § 46.2-104.

Second, Langston did not request a "registration card, driver's license, learner's permit, or temporary driver's permit," as Code § 46.2-104 allows a law-enforcement officer to request from an owner or operator of a vehicle whom the officer has signaled to stop. Rather, Langston simply asked Allen if he had any ID and if he minded if Langston checked it out. Code § 46.2-104 requires the owner or operator of a vehicle to show his license to operate that vehicle to a law-enforcement officer who requests to see such a license. However, it certainly does not require every citizen walking in a public place to comply with a law-enforcement officer's request to see general identification from that citizen.

Although Allen attempts to distinguish his case from McCain, we find the Supreme Court's analysis in McCain to be helpful and informative to our analysis here. In McCain, a police officer approached McCain, who was seated in the driver's seat of a parked car, and "asked McCain and his passenger . . . for identification." McCain, 261 Va. at 486-87, 545 S.E.2d at 543. The Supreme Court held that "request[ing] identification from McCain and conduct[ing] a check for outstanding warrants" did not constitute a seizure. Id. at 490, 545 S.E.2d at 545. The Court reasoned that the police officer in that case "did not observe McCain operating a motor vehicle and did not require him to produce a driver's license pursuant to Code § 46.2-104. Instead, [the officer] approached McCain's vehicle, which was parked on the side of a road, and asked McCain and his companion 'for some ID.'" Id.

Allen attempts to distinguish <u>McCain</u> by observing that although the officer in that case did not see McCain operating a vehicle, Detective Langston here had witnessed Allen driving his car shortly before he asked him for identification. However, this was not the only rationale of the Court's decision in <u>McCain</u>. The <u>McCain</u> Court also noted that the officer there "asked for some ID," rather than demanding a driver's license. <u>Id.</u> at 489 n.1, 545 S.E.2d at 544 n.1. The fact that McCain chose to provide the officer with his driver's license did not turn the officer's general request for identification into a requirement to produce an operator's license under Code § 46.2-104. <u>See</u> <u>id.</u> at 487, 490, 545 S.E.2d at 543, 545. Likewise, Detective Langston's request for identification here did not constitute a requirement to produce an operator's license under Code § 46.2-104.

For these reasons, we hold that the encounter between Allen and Langston was not a Fourth Amendment seizure under Code § 46.2-104. Rather, it was a consensual encounter in which Allen voluntarily responded to Langston's requests to speak with him and to see and check out his ID. Therefore, we conclude that the trial court did not err when it denied Allen's motion to suppress, and we thus affirm Allen's conviction.

<u>Affirmed.</u>