COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Decker
Argued at Norfolk, Virginia

UNPUBLISHED

RAYON LAVELLE PORK

v.        Record No. 1140-14-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
MARCH 31, 2015

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James C. Hawks, Judge

Charles E. Haden for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Rayon Lavelle Pork ("Pork") appeals the ruling of the Circuit Court of the City of

Portsmouth ("trial court") denying his motion to suppress the evidence recovered pursuant to a

Terry seizure and frisk. Pork's single assignment of error alleges the trial court erred in denying

his motion because the officer "lacked a reasonable articulable suspicion of criminal activity

afoot at the moment he drew his gun on Pork and ordered Pork out of his car" and also because

"the incriminating character of the plastic baggy and capsules seized from Pork's pocket was not

immediately apparent to [the officer] since the officer could not distinguish from feel alone

whether the plastic baggy or capsules contained legal or illegal drugs."

For the following reasons, we hold that the seizure and pat down of Pork were lawful

because the officer had reasonable, articulable suspicion that criminal activity was afoot and that

Pork was armed. We further conclude that we need not determine whether the seizure of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

heroin from Pork's pocket was constitutionally proper because this argument was waived by Pork's failure to assign error to the trial court's alternative holding regarding the doctrine of inevitable discovery. Accordingly, we affirm the trial court.

In reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (en banc) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

The Transition from Consensual Encounter to Terry Seizure

This appeal arises from an interaction between Pork and Officer Siniscalchi of the Portsmouth Police Department that occurred when Officer Siniscalchi responded to a citizen's complaint of a suspicious occupied vehicle.

> Police-citizen confrontations generally fall into one of three categories. First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

Andrews v. Commonwealth, 37 Va. App. 479, 489, 559 S.E.2d 401, 406 (2002) (citations omitted). Before we can assess whether Officer Siniscalchi's actions were constitutional, we

- 2 -

must first determine the nature of his encounter with Pork, and whether it changed at any point during the course of their interaction. Both parties agree that the encounter was initially consensual. Pork contends that he was seized when Officer Siniscalchi drew his weapon and ordered him out of the car. Conversely, the Commonwealth contends that Pork was not seized until he complied with Officer Siniscalchi's command to step out of the vehicle. By then, the Commonwealth argues Siniscalchi had a reasonable, articulable suspicion that Pork was carrying a concealed weapon and, thus, was engaged in criminal activity and was armed. We agree with the Commonwealth.

"An encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting a[n] . . . investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter." McGee, 25 Va. App. at 199, 487 S.E.2d at 262. Likewise, "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984).

Pork was sitting in the driver's seat of a vehicle parked legally on the street. Officer Siniscalchi approached the vehicle on foot from the driver's side at an angle that would have made his approach obvious to Pork. Officer Siniscalchi then explained to Pork that he was there to investigate a citizen's report that two men were sitting in a vehicle for unknown reasons. Pork was initially cooperative and provided his identification to Officer Siniscalchi. Thus, the encounter between Pork and the officer, at least at the outset, was indeed a consensual encounter.

## Terry Seizure

The next inquiry we must answer is when the interaction transformed from a consensual encounter to a seizure within the meaning of the Fourth Amendment. "A person is 'seized' within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable

person would believe that he was not free to leave the scene of an encounter with the police."

McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citations omitted).

Therefore, a "seizure occurs when a law enforcement officer, by physical force or some display

of authority, restrains in some manner a citizen's freedom of movement. Only when such

restraint is imposed is there a basis for invoking Fourth Amendment safeguards." Id. at 490-91,

545 S.E.2d at 545. Courts consider factors such as the presence of multiple officers, language or

tone of voice of the officer, physical touching of the person by the officer, and the display of a

weapon by an officer when determining if a person is seized within the meaning of the Fourth

Amendment. See United States v. Mendenhall, 446 U.S. 544, 554 (1980). However,

> [T]here is a *condition precedent* to a seizure: The individual must *submit* to the officer's force or authority. "[The Mendenhall] test is not applicable until the person submits to the officer's show of authority." Cochran v. Commonwealth, 258 Va. 604, 608, 521 S.E.2d 287, 289 (1999). "A seizure does not occur in the absence of . . . a defendant's submission to an officer's assertion of authority." McCain, 261 Va. at 491, 545 S.E.2d at 546.

Jones v. Commonwealth, 52 Va. App. 548, 557, 665 S.E.2d 261, 265 (2008).

In the present case, Pork was not seized until he submitted to Officer Siniscalchi's

display of force, show of authority, and complied with the officer's demand and exited the

vehicle. The record establishes that after Officer Siniscalchi observed the "silhouette of a

firearm" in the backseat of the vehicle that was easily accessible to both occupants of the vehicle,

he then asked Pork if there were any weapons in the car. Pork "hesitated completely," and his

eyes shifted to the right. Officer Siniscalchi then asked Pork to step out of the vehicle, but Pork

ignored the command and immediately concealed his right hand near his right hip, between the

driver's seat and center console. Officer Siniscalchi told Pork to put his hands on the steering

wheel at least three times, but Pork continued to reach to the right. In response to Pork's refusal

to keep his hands on the steering wheel, Officer Siniscalchi drew his weapon and again told Pork to step out of the car, at which point, Pork complied.

We have addressed this precise issue in two prior cases with strikingly similar facts. First, in Jones, this Court reasoned that because the appellant failed to comply with three commands from the police officer to put his hands on the steering wheel and instead reached for the floorboard, the appellant had not submitted to the officer's authority. 52 Va. App. at 557, 665 S.E.2d at 265-66. It was not until the police officer drew his weapon, upon learning of the presence of a knife, and ordered the appellant out of the car that the appellant complied with the officer's command and exited the vehicle. Id. Therefore, we held that "it was at that point, when [the appellant] exited the car, and *not before*, that [the appellant] was seized." Id. Similarly, in Beasley v. Commonwealth, 60 Va. App. 381, 394, 728 S.E.2d 499, 505 (2012), we held that the appellant "only *actually submitted* to [the police officer's] show of authority when the appellant stopped moving his hands furtively following [the police officer's] third instruction to keep his hands on his lap where they could be seen," and thus became seized when he actually complied with the officer's instructions and stopped moving his hands.

Similar to the appellants in Jones and Beasley, Pork initially ignored Officer Siniscalchi's multiple commands to keep his hands where they could be seen. It wasn't until Officer Siniscalchi drew his weapon and Pork complied with his command to exit the vehicle that Pork *actually submitted* to Officer Siniscalchi's authority and was seized within the meaning of the Fourth Amendment.

Having resolved when the seizure of Pork occurred, to determine if such seizure was lawful, we must next determine if, at the time of the seizure, Officer Siniscalchi had a reasonable, articulable suspicion that Pork may have been involved in criminal activity. Pursuant to Terry v. Ohio, 392 U.S. 1 (1968), "[i]f a police officer has reasonable, articulable

suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263 (citing Terry, 392 U.S. at 27). In the context of a consensual encounter, a police officer may elevate such encounter with a citizen into an investigatory detention only if the officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989). When a court reviews whether an officer had reasonable suspicion to temporarily detain a person, it must view the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer. Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).

In this case, Officer Siniscalchi first encountered Pork at night in a high crime area known for illegal drug activity that was dimly lit. Officer Siniscalchi observed the silhouette of what appeared to be a handgun in the backseat that was within reaching distance of both Pork and the other passenger. When asked if there were any weapons in the car, Pork hesitated in answering. When Officer Siniscalchi asked Pork to step out of the vehicle, Pork began reaching towards his right side, immediately concealing his right hand in the area between the driver's seat and center console. Despite Officer Siniscalchi's repeated commands for Pork to stop reaching and to place his hands on the steering wheel, Pork continued to conceal his right hand. Given these facts, Officer Siniscalchi had reasonable, articulable suspicion that Pork possessed a concealed weapon.

The holdings in Jones and Beasley further demonstrate that Officer Siniscalchi reasonably suspected that Pork possessed a concealed weapon. In Jones, we held that the

officers had reasonable suspicion that the appellant possessed a concealed weapon, given that the encounter occurred late at night in an area known for drug trafficking, the appellant acted "furtively" and ignored several commands from the officers, and the observation of a knife behind the passenger seat within reach of appellant. 52 Va. App. at 552-54, 665 S.E.2d at 264. In Beasley, we similarly concluded reasonable suspicion existed when the encounter occurred at night in an area known for "narcotics transactions and gun crimes," the appellant and other passenger of the minivan moved their hands in a "furtive manner" and continued to do so despite repeated directives from the officer to stop, and the officer's experience that persons "who move their hands in such a furtive manner are likely attempting to hide illegal drugs or weapons from the police." 60 Va. App. at 395-97, 728 S.E.2d at 506. In consideration of all the present circumstances in this case, we conclude that at the time of Pork's seizure, Officer Siniscalchi had reasonable, articulable suspicion that Pork possessed a concealed weapon, which also rendered him potentially armed and dangerous.

Terry Frisk

In addition to allowing brief investigatory detentions, Terry also held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a limited search of the suspect's outer clothing "to determine whether the person is in fact carrying a weapon." 392 U.S. at 24. Such frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Id. at 26. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146 (1972). If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid. Sibron v. New York, 392 U.S. 40, 65-66 (1968).

- 7 -

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Jones, 52 Va. App. at 567, 665 S.E.2d at 271 (quoting Michigan v. Long, 463 U.S. 1032, 1050 (1983)). For the reasons stated above that supported the seizure of Pork based upon a reasonable, articulable suspicion that Pork had a concealed weapon, the subsequent pat down of Pork and protective sweep of the vehicle for weapons were also reasonable.

Inevitable Discovery

During the pat down, Officer Siniscalchi removed a baggy of capsules from Pork's front pocket, which were later determined to be heroin. Pork argues that the seizure of the baggy was improper under the holdings of Minnesota v. Dickerson, 508 U.S. 366 (1993), Cost v. Commonwealth, 275 Va. 246, 657 S.E.2d 505 (2008), and Grandison v. Commonwealth, 274 Va. 316, 645 S.E.2d 298 (2007). The Commonwealth contends that Officer Siniscalchi testified that the character of the heroin capsules was immediately apparent as contraband, therefore satisfying the "plain feel" doctrine of Dickerson. The Commonwealth further argues that even if the seizure was improper, the heroin capsules would have inevitably been discovered as a result of the sweep for weapons of the area around the driver's seat, which uncovered a concealed weapon.

On appeal, Pork assigns error only to the trial court's holding with respect to 1) whether reasonable suspicion existed for Pork's seizure and detention and 2) the applicability of the "plain feel" doctrine of Dickerson. Pork fails to assign error or even address the trial court's alternative holding regarding the application of the inevitable discovery doctrine. The Commonwealth contends that because Pork failed to assign error to the trial court's inevitable

discovery ruling on brief, he has waived any issue regarding error to this ruling on appeal before this Court.  We agree.

This Court's jurisprudence is clear that when a trial court issues one or more alternative holdings, the appellant's failure to address one of those holdings constitutes a waiver of any challenge to the trial court's ruling on that issue.  See Johnson v. Commonwealth, 45 Va. App. 113, 115-16, 609 S.E.2d 58, 59 (2005).  In Johnson, the trial court denied the appellant's motion to suppress heroin obtained during a Terry frisk, holding first, that the officer did not exceed the permissible limits of a weapons frisk, and second, the evidence proved the heroin would have been "inevitably discovered" by the officer even if the weapons frisk had not taken place.  Id. at 115, 609 S.E.2d at 59.  This Court further held that the inevitable discovery doctrine, when properly applied, serves as an adequate and independent legal basis for denying the appellant's motion to suppress.  Id. at 117, 609 S.E.2d at 60.  Therefore, because the appellant only challenged the trial court's first holding on appeal, without assigning error to the ruling regarding inevitable discovery, this Court deemed the appellant's argument relating to the illegality of the seizure of drugs waived, and declined to consider whether the trial court properly applied the doctrine of inevitable discovery.  Id.

Although Pork challenged the trial court's inevitable discovery ruling below, he completely abandoned this challenge on appeal.  The trial court specifically held that Officer Siniscalchi's sweep of the area of the driver's area of the car for weapons as part of the pat down of Pork would have resulted in the discovery of the concealed firearm that was located in between the driver's seat and the center console and that, "the arrest would have been made and everything else would have flowed from there in inevitable discovery."  Accordingly, the trial court deemed it unnecessary to address the impact of the exclusionary rule to the "plain feel" doctrine to determine if the drugs should have been suppressed.  Because the seizure and frisk

were proper under the Fourth Amendment and because Pork failed to assign error to the alternative ruling of the trial court on appeal, which is procedurally waived pursuant to <u>Johnson,</u> we need not reach the merits of Pork's argument regarding the illegality of the seizure of the heroin.

In sum, based upon the totality of the circumstances, we find that the seizure and pat down of Pork were lawful because Officer Siniscalchi had reasonable, articulable suspicion that Pork had a concealed weapon. We further conclude that we need not address the merits of the legality of the seizure of the baggy of heroin in light of Pork's failure to assign error to the trial court's alternative ruling based on the doctrine of inevitable discovery. Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>